This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35986**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**RHONDA PINKERTON,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Raymond L. Romero, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**　　Defendant Rhonda Pinkerton appeals her conviction for one count of driving while under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-102(A) (2010, amended 2016). Defendant raises two issues on appeal: (1) her trial in the district court violated her right to be free from double jeopardy; and (2) her right to a speedy trial was violated. We affirm.

**BACKGROUND**

**{2}** On July 27, 2015, Defendant was charged in Eddy County Magistrate Court with driving under the influence of drugs contrary to Section 66-8-102(B). The prosecutor dismissed the complaint without prejudice on November 10, 2015, the day of Defendant's scheduled bench trial, and subsequently refiled the charges in the district court.[1] Less than one month before her July 5, 2016, trial setting in district court, Defendant filed a motion to dismiss for violation of her right to a speedy trial. The district court summarily denied Defendant's speedy trial motion, and the matter proceeded to trial. At trial the jury found Defendant guilty of driving under the influence of drugs. Approximately three months later and prior to sentencing, Defendant filed a motion to dismiss for lack of jurisdiction, arguing that double jeopardy barred the district court from hearing her case. The district court denied the motion and proceeded to sentencing. This appeal followed.

**DISCUSSION**

**Double Jeopardy**

**{3}** Defendant argues that jeopardy attached in the magistrate court proceedings and, as such, her trial in district court constituted a successive prosecution in violation of her right to be free of double jeopardy. The State argues that jeopardy did not attach in the magistrate court proceeding because (1) the prosecutor dismissed the complaint upon the denial of a motion in limine prior to commencement of trial; and (2) even if trial had commenced, jeopardy did not attach because the drug recognition expert (DRE) only testified to his expert qualifications, not substantive evidence.

**{4}** "We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation." *State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745. The United States Constitution and the New Mexico Constitution provide that no person shall "be twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. The Double Jeopardy Clause protects against separate kinds of harm, including, "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Montoya*, 2013-NMSC-020, ¶ 23, 306 P.3d 426 (internal quotation marks and citation omitted). It "also protects a criminal defendant against being retried in some instances when the criminal proceeding was aborted before a final judgment was obtained." *State v. Saavedra*, 1988-NMSC-100, ¶ 7, 108 N.M. 38, 766 P.2d 298. Jeopardy attaches when a defendant is "put to trial before the trier of facts, whether the trier be a jury or a judge." *State v. Davis*, 1998-NMCA-148, ¶ 14, 126 N.M. 297, 968 P.2d 808 (internal quotation marks and citation omitted). In a bench trial, "jeopardy attaches when the court begins to hear

1Defendant was charged in magistrate court pursuant to Section 66-8-102(B) but was charged and convicted in district court under Section 66-8-102(A). However, it appears from the record that the State proceeded under the same theory in district court as it had in magistrate court, i.e., Defendant was guilty of driving under the influence of drugs.

at least some evidence on behalf of the state." *See State v. Nunez*, 2000-NMSC-013, ¶ 28, 129 N.M. 63, 2 P.3d 264. The defense of double jeopardy may not be waived; however, such a defense must be supported by a factual basis in the record. *State v. Antillon*, 2000-NMSC-014, ¶ 6, 129 N.M. 114, 2 P.3d 315. "We place the burden on the defendant, the party raising the double jeopardy challenge, to provide a sufficient record for the court." *State v. Sanchez*, 1996-NMCA-089, ¶ 11, 122 N.M. 280, 923 P.2d 1165.

**{5}** Defendant's claim is fact-intensive and requires this Court to review the evidence to determine whether jeopardy attached in the magistrate proceedings. We ordinarily review the district court's factual determinations, including those pertaining to what happened in magistrate court, under a deferential substantial evidence standard of review. *State v. Baca*, 2015-NMSC-021, ¶ 25, 352 P.3d 1151. However, here, no evidence was admitted during the hearing on Defendant's motion to dismiss, and the district court made no findings of fact when it denied the motion. Because of the lack of a factual record, we granted Defendant's motion for remand and ordered the district court to conduct a hearing for the purpose of reconstructing what took place in the magistrate court.

**{6}** The district court held a reconstruction hearing on November 5, 2018, at which Defendant and her attorney in the magistrate proceedings testified. The State did not proffer any witnesses at either the initial hearing or the continued hearing held in December 2018, but did provide the district court a copy of the pleadings filed in magistrate court. The district court entered findings of facts at the conclusion of the reconstruction hearing and provided this Court with the transcript of the hearing and the magistrate record. The district court found that several persons who may have had direct knowledge of the events in the magistrate court were unavailable for the reconstruction hearing, including the magistrate court judge, the assistant district attorney, and two law enforcement officers. Additionally, the district court found that Defendant and her magistrate court defense counsel did testify at the reconstruction hearing. The district court made no factual findings as to what occurred in the magistrate court. In addition to the district court's findings, we briefly review the testimony provided at the hearing.

**{7}** Defendant's testimony at the reconstruction hearing was disjointed, vague, and at times contradictory. Defendant testified that on the day of her scheduled bench trial, witnesses were sworn in, including the arresting officer and DRE, and that witnesses were then excluded from the courtroom. Defendant could not recall if either the prosecutor or her attorney made opening statements. She testified, however, that the prosecutor called the DRE as its first witness and he was questioned in order "to show the expert." Defendant clarified that after the prosecutor began questioning the DRE, her attorney raised an issue about the DRE's expertise at which point the prosecutor questioned the witness about a twelve-point evaluation. Defendant could not testify to the specific questions asked by the prosecutor in the magistrate proceedings but did state that questioning only addressed expert qualifications. Defendant also stated that the DRE was not permitted to testify as an expert witness which prompted an exchange

between the prosecutor and the magistrate judge that ultimately resulted in the prosecution filing a dismissal.

**{8}** While Defendant's testimony could support a conclusion that her case was called for trial, because she testified that witnesses were sworn and excluded from the courtroom, it equally supports a conclusion that after excluding witnesses from the courtroom the magistrate court entertained a motion in limine to determine whether the DRE would be qualified as an expert witness. This conclusion is especially compelling in light of the fact that the DRE was called before the arresting officer. Further, there is no evidence that, regardless if trial had started, questioning of the DRE went beyond his expert qualifications and did not include testimony specific to Defendant's case.

**{9}** Testimony from Defendant's attorney is similarly ambiguous. Defendant's attorney testified that both parties confirmed they were ready to proceed to trial and that the prosecution was to proceed with its case. He doubted opening remarks were made but could not remember specifically. He could not recall if witnesses were sworn during the proceedings but stated that he objected when the prosecutor called a witness. However, he could not recall which witness he objected to or why he objected. Nor did he recall if the witness took the witness stand.

**{10}** In addition to the district court's findings and the testimony of Defendant and her counsel, we look to the magistrate court record to inform our analysis. *See Baca*, 2015-NMSC-021, ¶ 26 ("The magistrate court file ordinarily should assist in determining whether there has been an acquittal."); *City of Farmington v. Pinon-Garcia*, 2013-NMSC-046, ¶ 20, 311 P.3d 446 (observing that the municipal court record reflected dismissal rather than acquittal); *State v. Montoya*, 2008-NMSC-043, ¶ 20, 144 N.M. 458, 188 P.3d 1209 (holding that the magistrate court order was on its face a dismissal). Here, the record includes the prosecutor's notice dismissing the complaint without prejudice "pending further investigation." Rule 6-506.1(A) NMRA of the Rules of Criminal Procedure for the Magistrate Courts requires that the prosecution can only dismiss its case prior to commencement of the trial or after the acceptance of a plea of guilty or no contest. The dismissal supports an inference that the State dismissed its case before trial began. An inference supported by the absence of a final order issued by the magistrate court specifying the court's disposition of the criminal complaint. *See* Rule 6-701 NMRA (stating that a final order shall be entered in every case specifying that if a defendant is found guilty, a judgment of guilty shall be rendered and if the defendant has been acquitted, a judgment of not guilty shall be rendered). Additionally, the complaint, refiled in district court, states that the charges in magistrate court were dismissed pursuant to the denial of a pretrial motion in limine.

**{11}** The available evidence is far from conclusive, and we will not speculate on appeal regarding the record. *See Antillon*, 2000-NMSC-014, ¶ 6 (declining to review matters outside of the record); *Sanchez*, 1996-NMCA-089, ¶ 10 (stating that this Court "will not engage in conjecture on appeal for [the d]efendant's benefit"). It is Defendant's burden, as the party raising the double jeopardy challenge, to provide a sufficient record

to this Court. *See Sanchez*, 1996-NMCA-089, ¶ 11. We conclude that the record is inadequate to support Defendant's double jeopardy claim on appeal.

**Speedy Trial**

**{12}**   Defendant next contends that her right to speedy trial was violated, arguing that her case was simple and that despite the dismissal in magistrate court she should have been brought to trial within six months pursuant to Rules 6-506 and 5-604 NMRA. The State responds: (1) Defendant's case was brought to trial within the permissive time frame for simple cases established in *State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387, and therefore a speedy trial analysis was not triggered; and (2) even if the six-month rule applies to district court proceedings, a new six-month period began once the complaint was refiled in district court.

**{13}**   "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272. When determining whether a defendant has been deprived of the right to a speedy trial, we examine the four factors identified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "In analyzing these factors, we defer to the district court's factual findings concerning each factor as long as they are supported by substantial evidence, we independently review the record to determine whether a defendant was denied his speedy trial right, and we weigh and balance the *Barker* factors de novo." *State v. Montoya*, 2015-NMCA-056, ¶ 12, 348 P.3d 1057.

**{14}**   We first address the State's contention that the length of delay in this case is insufficient to trigger consideration of the *Barker* factors. This Court recently addressed a similar argument in *State v. Radler*, 2019-NMCA-052, 448 P.3d 613. In *Radler*, the state argued that because the twelve-month benchmark established in *Garza* had not been met, the merits of the defendant's motion should not have been considered by the district court. *Id.* ¶¶ 6, 12. In addressing the issue, we considered revisions to Rule 5-604(B) enacted after the Supreme Court's decision in *State v. Savedra*, 2010-NMSC-025, 148 N.M. 307, 236 P.3d 20, and concluded that "[t]he text of Rule 5-604(B), coupled with the guidance giving rise to the rule in *Savedra*, dispose of the [s]tate's contention." *Radler*, 2019-NMCA-052, ¶ 12. We held that "the language of [Rule 5-604(B)] makes clear that for refiled concurrent jurisdiction cases, a defendant may assert the challenge whenever the district court fails to schedule a refiled case within the trial deadline that would have been applicable in the court of limited jurisdiction." *Radler*, 2019-NMCA-052, ¶ 12 (internal quotation marks and citation omitted). Thus, we analyzed the defendant's speedy trial claim under the *Barker* factors because the defendant's trial occurred after the original six-month period had expired. *Id.* ¶¶ 12, 14-25.

**{15}**     Similarly, Defendant's district court trial date in this case fell beyond the original six-month period. Therefore, the delay is sufficient to trigger evaluation of the *Barker* factors. *See id.* ¶ 12. We now turn to the merits of Defendant's speedy trial claim.

**Prejudice**

**{16}**     Although our speedy trial analysis typically begins with consideration of the length of delay, in this case our review benefits from first considering the prejudice factor. "The 'heart' of the speedy trial right 'is preventing prejudice to the accused.' " *State v. Lujan*, 2015-NMCA-032, ¶ 20, 345 P.3d 1103 (quoting *Garza*, 2009-NMSC-038, ¶ 12). To determine if Defendant was prejudiced, we consider whether there was (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of Defendant's defense. *See Garza*, 2009-NMSC-038, ¶ 12. Generally, the defendant has the burden of proof to show "particularized prejudice." *Serros*, 2016-NMSC-008, ¶ 86 (internal quotation marks and citation omitted).

**{17}**     Defendant makes no claim of oppressive pretrial incarceration but does allege that she suffered anxiety and concern.  "[W]e weigh this factor in a defendant's favor only where the anxiety suffered is undue." *Lujan*, 2015-NMCA-032, ¶ 20 (omission, internal quotation marks, and citation omitted). Defendant's claim of suffering from anxiety and concern is based on defense counsel's assertion that Defendant "lost employment opportunities." With regard to employment, our speedy trial jurisprudence has recognized weighty prejudice arising from the loss of an existing job. *State v. Johnson*, 1991-NMCA-134, ¶ 7, 113 N.M. 192, 824 P.2d 332 (concluding that the defendant suffered substantial prejudice where the defendant demonstrated that he was temporarily suspended from his job without pay after indictment). Here, no claim is made that Defendant lost or was suspended from a job. Moreover, aside from defense counsel's assertions of "lost employment opportunities" both in the motion to dismiss and on appeal, the record contains no evidence identifying what employment opportunities Defendant lost. *See State v. Pacheco*, 2017-NMCA-014, ¶ 8, 388 P.3d 307 ("[S]tatements of counsel are not evidence." (internal quotation marks and citation omitted)). There are no letters or affidavits in the record demonstrating that Defendant applied for and lost an employment offer as a result of her criminal case. Defendant is therefore asking this Court to determine that she suffered undue anxiety and concern based on unsupported speculation, which we will not do. *See State v. Ochoa*, 2017-NMSC-031, ¶ 61, 406 P.3d 505 (declining to speculate as to particularized anxiety or concern where the defendant did not provide evidence in support); *Spearman*, 2012-NMSC-023, ¶ 39 (declining to hold that the defendant suffered undue anxiety based on the bare allegations of defense counsel); *Radler*, 2019-NMCA-052, ¶ 23 (declining to assign weight to nebulous claim of a lost job opportunity). We therefore conclude that Defendant failed to demonstrate that she suffered undue anxiety and concern.

**{18}**     The third type of prejudice, the impairment of an accused to defend him or herself, is the "most serious" and must be substantiated by the defendant. *Garza*, 2009-NMSC-038, ¶¶ 35-36. Defendant's argument is not specific as to whether she claims prejudice to her defense in district court or on appeal. Regardless, she fails to

substantiate her claim in either case with evidence in the record. Defendant asserts that the eleven-month delay following dismissal weakened her defense because "[w]itnesses moved away or their memory as to what happened was lost." When "the defendant asserts that the delay caused the unavailability of a witness and impaired the defense, the defendant must state with particularity what exculpatory testimony would have been offered, and the defendant must also present evidence that the delay caused the witness's unavailability." *Garza*, 2009-NMSC-038, ¶ 36 (alterations, internal quotation marks, and citation omitted).

**{19}** After asserting that "witnesses moved away or their memory . . . was lost[,]" Defendant does not identify what witnesses moved away and merely cites to the district court's order on remand. In that order the district court found that witnesses were unavailable or were unable to be located to participate in the reconstruction hearing. Specifically, the district court found that the magistrate judge was no longer a sitting judge and that the State asserted it was unable locate him for service. The district court did not find that the former magistrate court judge moved or that the defense made any attempt to locate and serve the magistrate with a subpoena to appear for the hearing. The district court also found that the former prosecutor was no longer employed with the Fifth Judicial District Attorney's Office, had moved out of state, and that the State asserted it had been unable to locate her. However there is no finding as to when the original prosecutor moved out of state or that the defense tried to locate her. Finally, the district court found that the two officers listed as witnesses in the magistrate proceedings were out of town at the time of the reconstruction hearing but did not find that they had moved permanently.

**{20}** To the extent Defendant argues her double jeopardy defense in district court was impaired, we fail to see how the order on remand—issued in 2018—bears any relevance to Defendant's double jeopardy claim in 2016. The order does not establish that any of the witnesses moved or that their memory was lost during the eleven-month period between dismissal and trial. In fact, evidence in the record appears to contradict Defendant's assertion. The criminal information filed in district court was signed by the same prosecutor that appeared in magistrate court, and many of the witnesses listed to testify in the magistrate proceedings participated in trial in the district court. Moreover, the district court's order does not illustrate what, if any, exculpatory testimony would have been offered by absent witnesses.

**{21}** Insofar as Defendant may be contending that the delay impaired her ability to establish a double jeopardy claim on appeal, her argument is similarly deficient. To begin, Defendant cites no authority extending application of the *Barker* factors beyond a speedy trial claim, and we therefore assume none exist. *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]" ). Nevertheless, even if we were to consider Defendant's claim, for the same reasons discussed above, it lacks merit. Defendant does not articulate what, if any, exculpatory testimony may have been offered by unavailable witnesses. Furthermore, considering that Defendant could have challenged the district

court's jurisdiction as early as March 24, 2016, but instead waited roughly six months to raise this challenge, we will not speculate that the delay resulting from refiling the complaint in district court caused the unavailability of witnesses. Based on the forgoing, we conclude that Defendant has failed to present evidence of actual prejudice caused by delay.

**{22}** Because Defendant fails to show actual prejudice, the three other *Barker* factors must weigh heavily against the State in order to establish a speedy trial violation. *See State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230 (citing *Garza*, 2009-NMSC-038, ¶ 39). For the reasons that follow, she fails to do so.

**Length of Delay**

**{23}** Although the six-month rule may trigger examination of the *Barker* factors in concurrent jurisdiction cases, length of delay is nevertheless measured against the *Garza* guidelines. *Radler*, 2019-NMCA-052, ¶ 16. The guidelines dictate that for simple cases a delay of more than twelve months is presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶ 48. The parties agree that this is a simple case. Defendant contends that her right to a speedy trial attached upon arrest on July 25, 2015. The State asserts that Defendant's right was not triggered until she was charged by criminal complaint in the magistrate court on July 27, 2015. The State further contends that the time between dismissal in magistrate court and filing of charges in district court should not be included in our delay calculation because no charges were pending during that period and Defendant's liberty was not restrained. We have held that the time between dismissal and reindictment is not included in our delay calculation absent a showing of bad faith. *See State v. Parrish*, 2011-NMCA-033, ¶ 15, 149 N.M. 506, 252 P.3d 730 (declining to include time on appeal in delay calculation when the defendant failed to show unreasonable delay on the part of the state); *State v. Hill*, 2005-NMCA-143, ¶ 13, 138 N.M. 693, 125 P.3d 1175 (declining to include time while no charges were filed or pending without allegations of bad faith). Nonetheless, we need not decide whether to exclude the periods identified by the State because the result is the same either way. We explain.

**{24}** The time between Defendant's arrest on July 25, 2015, and her trial on July 5, 2016, is just over eleven months. Although this length of delay approaches the benchmark set out in *Garza*, it does not exceed it. In *Radler*, we compared a delay short of the relevant guideline to cases in which delay barely exceeded the applicable standard. 2019-NMCA-052, ¶ 17. Noting that in such cases our appellate courts have weighed length of delay neutrally, we nonetheless concluded that "faithful application of the principles from the minimal-delay cases compels a conclusion that delays not exceeding the guideline will generally weigh against a defendant." *Id.* In contrast to the relatively short delay in *Radler*, the length of delay here is significantly closer to the *Garza* bench mark and is therefore more analogous to negligible delay cases. *See State v. Coffin*, 1999-NMSC-038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (concluding that a delay only slightly exceeding guidelines weighed "neutrally between the parties"); *State v. Laney*, 2003-NMCA-144, ¶ 16, 134 N.M. 648, 81 P.3d 591 (concluding that a delay

"sixty-two days" beyond the applicable guideline had "little practical effect on the balancing"). We therefore weigh the eleven-month delay neutrally.

**{25}**    Because Defendant failed to demonstrate particularized prejudice caused by the eleven-month delay, which we weigh neutrally, we do not consider the remaining *Barker* factors and conclude that Defendant's right to a speedy trial was not violated. *See Samora*, 2016-NMSC-031, ¶ 23; *Garza*, 2009-NMSC-038, ¶ 39. Accordingly we affirm the district court's denial of Defendant's speedy trial motion.

**CONCLUSION**

**{26}**    For the above stated reasons, we affirm Defendants conviction.

**{27}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**